[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by summons and complaint dated August 11, 1998 and returnable September 8, 1998, in which complaint the plaintiff sought a dissolution of the marriage, an equitable division of real and personal property and such other relief as law and equity may provide. CT Page 106
The usual automatic orders accompanied the complaint.
The defendant appeared by counsel on August 26, 1998 and by virtue of a cross complaint filed on that date, sought a dissolution of the marriage, alimony, and an assignment of the 742 Pendleton Hill Road, North Stonington property, exclusive use and possession of the Pendleton Hill property, an allowance to defend an equitable division of real and personal property and such other relief as law and equity may provide.
A motion for alimony and a motion for exclusive use and possession accompanied the cross complaint.
On November 9, 1998 an agreement of the parties was executed by the plaintiff and the defendant and their respective counsel.
The motion as to alimony was approved by the Court, Solomon, J. The agreement provided that the plaintiff husband should pay to the defendant wife as alimony pendente lite the amount of $400.00 per week to be paid on a bi-weekly basis and that the defendant should be solely responsible for any and all bills and expenses associated with the former marital residence located on Pendleton Hill Road including mortgage, taxes, insurance, utilities, etc.
The plaintiff filed a financial affidavit on November 9, 1998 setting forth his income and expenses and assets.
The plaintiff and the defendant with their respective counsel appeared before the Court on December 14, 1999 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff and the defendant, whose maiden or birth name was Stephanie Woods, were joined in marriage on June 2, 1979 at Andrews, Maryland.
The plaintiff husband is age 42.
The defendant wife is age 42.
The plaintiff represents that his health is good and characterizes his wife's health as good. CT Page 107
There are no children born to this marriage.
No children have been born to the defendant wife from the date of the marriage to the present time.
Neither party have been the recipient of any welfare or assistance from the State of Connecticut or any town, city or municipality.
The defendant wife has resided in Connecticut since 1980.
The plaintiff is an officer; to wit, a commander in the United States Navy and has served in varying capacities in the naval service for the last 20 years. The plaintiff has a bachelor of science degree in marine engineering.
The defendant wife has a bachelor's degree in biology.
The plaintiff is now pursuing a master's degree in business administration.
During the marriage for the first eight years, thereof, the plaintiff was for various extended periods of time at sea in the U.S. Navy Submarine Service.
The plaintiff has been preoccupied with or concentrated on his profession and children were not considered in the marital relationship. The plaintiff felt that his being away for long extended periods of time did not justify a family.
During the early years of the marriage the defendant was not employed. After the first eight years of the marriage, the plaintiff's naval activities rotated between shore duty and sea duty.
The plaintiff testified that prior to the marriage of the parties the defendant indicated that she was not disposed to have children. On one occasion when the defendant thought that she was pregnant, she indicated that she would seek an abortion, but apparently the pregnancy was false. The defendant has been interested in showing a particular breed of dogs for her day-to-day activities. The defendant shows Welsh Corgis and has had as many as seven but not less than three of these animals during the course of the marriage. CT Page 108
At the 15-year point in the marriage, the plaintiff confronted the defendant with regard to the issue of their not having any children and for her not being gainfully employed. Plaintiff felt that the defendant should get a job and that this would be beneficial to the relationship. In addition, the plaintiff suggested to the defendant at various times that she return to school and the plaintiff indicated he was willing to help her with continuing education if she was so disposed.
As a result of the conversations between the parties at the 15-year point, the defendant sought a job at McDonald's. The defendant was employed at McDonald's for one year and then terminated the employment. The defendant was unhappy with the job and felt that the position was beneath her, mindful of her education.
The plaintiff suggested that she look for a better and more properly suited employment position. There was a point in time when the plaintiff secured a friend outside the marriage but there is no indication that it was any more than a platonic relationship. In any event, the plaintiff terminated the relationship and has not continued it to this date.
The plaintiff had written certain letters to the friend and the friend's spouse at one point apparently located the letters and called the defendant incident to the same. The plaintiff never denied the friendship to the defendant and advised the defendant to that effect in November of 1997.
The plaintiff came to a point where he wanted to reevaluate his life and felt that the parties should divorce one from the other.
The plaintiff felt certain guilt with regard to the non-sexual friendship and after November 1997 moved into a separate bedroom. There did not appear to be any amicable resolution with regard to the differences of the parties even though they resorted to mediation.
At one point in time, the plaintiff considered leaving the service but did not do so.
As of May 1999 the plaintiff had finished 20 years of service. The plaintiff indicated that it was his intention to retire in July of 2001 because the naval service is presently assisting him in paying a portion of the tuition incident to his endeavoring to CT Page 109 secure a master's degree in business administration.
The plaintiff has sought the master's degree in business administration in order that he might have a marketable skill outside the service mindful of the very technical and tactical nature of his activities as a commander in the Navy.
The plaintiff testified that the defendant was an apt student, had good grades in college and had worked with the Smithsonian Institute in the summer of 1987.
The plaintiff and the defendant are in agreement with regard to the value ascribed to the Pendleton Hill property; to wit, $122,250.00, and are in agreement with regard to the outstanding mortgage on the premises in the amount of $86,000.00.
The defendant has been residing in the Pendleton Hill property for some time by herself. The plaintiff's address at this time is in Rhode Island except for his military activities at the Submarine Base in New London.
The plaintiff who resides in Westerly, Rhode Island shares certain expenses with another occupant. The plaintiff testified that he is not residing with any female companion.
The plaintiff was commissioned after graduation from Annapolis at the Naval Academy in May of 1979 and started his naval career as an ensign.
He subsequently was sent to school by the service in Orlando, Florida at the Nuclear Education Base located there. Thereafter, he was sent to Boylston Spa, New York for advanced training in nuclear propulsion and subsequently to the Submarine School at Groton, which has been pretty much his home base since 1980 except for the extended periods of time at sea.
The plaintiff has held the rank of commander since 1994.
The plaintiff expects to complete his work incident to securing the master's degree in April of 2000.
The plaintiff has a top secret security clearance with the U.S. Navy.
Incident to his work, the plaintiff supervises two junior CT Page 110 officers and nine enlisted men.
As indicated, he characterizes his health as good.
The plaintiff anticipates a 4.8 percent increase in his compensation as of January 2000.
On the other side of the coin he will suffer a $200.00 per month reduction because of housing allowance changes once the dissolution is granted.
The parties have not engaged in marital counseling.
The plaintiff is not required to retire in 2001 and might possibly elect to continue with the Naval Service.
The defendant in her testimony verified the date and place of the marriage, her age, her securing a bachelor of arts degree in biology incident to her graduation from Hood College in 1979 in Maryland.
In addition, thereafter the defendant undertook a course at Thames Valley College in Marine Biology and Oceanography.
Contrary to the plaintiff's testimony, the defendant says that her health is not good and that she is presently under psychiatric care since June of 1999.
Prior to that the defendant sought the assistance of family services at the sub base in July of 1998 for three months.
The defendant represents that she now takes Prozac, 40 mg. daily, and Thoraspan, 2 mg. daily, for depression.
The defendant testified that she felt worthless after the initiation of the divorce petition.
The defendant testified that her initially seeking a job at McDonald's was because it was in close proximity to the home and she needed some wherewithal to assist with the payment of dental bills.
The defendant claims that the plaintiff used alcohol as a crutch and that there were discussions between them on a monthly basis, as to this issue but there was no independent evidence to CT Page 111 that effect presented to the Court and the plaintiff's appearance certainly gave no indication of any immoderate use of alcohol, particularly mindful of his profession and the obligations and responsibilities incident thereto.
The defendant, contrary to the plaintiff's testimony, indicated that in the first year of the marriage that she did some substitute teaching and tutoring, that she has been on the Internet looking for positions and has gone through a career research program.
The defendant indicates that she intends to apply to a law school and is desirous of becoming an attorney and being admitted to the bar. She has visited different law schools and has taken aptitude tests looking toward law school admission.
The defendant testified incident to her anticipated educational program that the annual tuition cost at the University of Connecticut Law School is $10,000.00. At other law schools, academically recognized schools, she indicated that the annual tuition charge was between $15,000.00 and $20,000.00. The defendant said that she hopes to enter law school in the year 2000.
The defendant is desirous of having her maiden name restored to her.
The defendant acknowledged that during the course of the marriage that the plaintiff had offered that he would pay for continuing her education but the defendant never availed herself of that.
The social life and activities between the parties have apparently been practically zero, extremely minimal.
The parties resided in North Stonington on Pendleton Hill from and after 1984 until the separation.
The initial deposit on that property, $12,000.00, came from the turning into cash of certain insurance that the plaintiff had at that time.
No medical testimony was offered to the Court nor any medical report submitted insofar as the defendant's claims of any problems that exist at the present incident to depression or like CT Page 112 matters.
Both of the parties in their appearance in court appeared healthy and well-dressed. Each of the parties was articulate in their testimony.
There was no evidence of any physical violence during the course of this admittedly 20-year marriage nor even frequent arguments as between the parties.
From the financial affidavits of the parties the Court finds that the plaintiff, as indicated, is a commander in the United States Navy, presently attached to the Naval War College in Newport, Rhode Island.
The plaintiff's weekly gross income is $1,572.13. Deductions for various taxes and matters of like nature, $374.60, for a net of $1,197.53.
The plaintiff indicates that his total weekly expenses amount to $1,211.35.
The plaintiff has relatively minimal debt of $5,964.00 on which payments are being made.
As indicated earlier by agreement, the parties have valued the 742 Pendleton Hill Road property at $122,250.00, with a mortgage of $86,000.00, for an equity of $18,125.00 as to each.
The $18,125.00 of course is the plaintiff's half of the equity. The total equity is $36,250.00.
The plaintiff has a 1992 Buick free and clear valued at $5,000.00, a 1995 Plymouth valued at $16,000.00, with a loan balance in the same amount for a zero equity, computers, televisions and stereos valued at $5,900.00; however, by prior agreement and mediation, issues as to personal property; to wit, automobiles, computers, televisions, stereos and matters of like nature have been resolved and it has been indicated to the Court that no order incident to personal property is required.
In addition, the plaintiff's financial affidavit reflects modest amounts in three checking accounts, and funds in three Fidelity Destiny accounts which total $139,198.00. Service insurance with a cash value of $8,300.00. CT Page 113
If the plaintiff were to retire at this time, his gross monthly military pension would be $2,639.00 monthly, with a net of $1,900.00 monthly.
The affidavit also reflects certain canceled life insurance to the amount of $8,387.00.
From the defendant's financial affidavit it appears that the lady has returned to employment at McDonald's, gross weekly wage, $330.14, appropriate deductions of $58.74, net, $271.40. In addition, the defendant shows the $400.00 weekly alimony order earlier entered by the Court, Solomon, J.
The defendant shows her weekly expenses as amounting to $680.92.
The defendant's figures with regard to the Pendleton Hill Road property are identical to the plaintiff's.
The defendant shows a 1995 Plymouth automobile with a very modest equity and the affidavit then goes on to reflect the three joint bank accounts, totaling $1,880.00, a few shares of McDonald's stock, plus the defendant's erroneously treating the Fidelity Destiny accounts as being in joint names, which in fact appears not to be the case. The defendant has three insurance policies with modest cash values totaling $4,381.00. In addition, the defendant has a Templeton Growth Fund of $4,332.00, plus a McDonald's account of $888.00, plus an additional Provident Mutual policy which has a value of $1,491.00.
 Discussion
This is a marriage of 20 years between two well-educated and as best the Court can devine fairly healthy adults who before the initiation of the petition had never had any health problems.
The marital union was never blessed with any children, but that was apparently acceded to by both of the parties.
The plaintiff's position can be understood by virtue of his long sojourns at sea in the naval service, on one occasion being for a period of 16-18 months, and various extended absences over the entire naval career. CT Page 114
The defendant, until recently, has never made any serious effort to be employed outside the home. She has engaged in caring and showing purebred dogs; to wit, Welsh Corgis, and apparently has been content to have that situation exist over the years.
Both of the parties are well educated and articulate. The defendant at this juncture hopes to attend law school.
The Court is satisfied on the basis of the testimony elicited that the plaintiff's friendship outside the marriage was platonic and in fact has been terminated.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of the witnesses, their candor or lack thereof, any and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
As to the marital residence at 742 Pendleton Hill Road, North Stonington, the plaintiff husband is to convey his equity interest in that property to the defendant wife and the defendant to be responsible thereafter for the mortgage obligation thereon and to hold the plaintiff harmless from said mortgage on the property.
The conveyance may be done by either warranty or quitclaim deed. The same to be accomplished within 30 days from the date of this memorandum of decision. CT Page 115
As to alimony, the plaintiff husband shall pay to the defendant wife the sum of $350.00 per week for a period of four years. The amount and term are non-modifiable. The alimony payments may terminate on the defendant's earlier death, remarriage or cohabitation with an unrelated male under the statute.
The Court acknowledges that the defendant in her proposed orders requests alimony for 20 years but the Court sees no necessity for such a lengthy order under the circumstances.
The plaintiff shall assist the defendant as concerns any paperwork that may be necessary incident to her being entitled to or having the outstanding military medical coverage continue, which medical coverage according to testimony to the Court is free and will not and does not cause the defendant any expense and may continue subsequent to the order of dissolution.
The defendant may retain her individual, sole Citizen's Bank, Dime Bank and Corp. Am. Credit Union checking and savings accounts, her McDonald's shares, any cash value to her individual personal life insurance, her Templeton Growth Fund IRA and her Provident Mutual asset and her McDesop.
Upon the plaintiff's retirement from the United States Naval Service, the defendant wife shall be entitled to 50% of the military pension, the same to be accomplished by a qualified domestic relations order (QDRO) as may be necessary. The plaintiff shall be responsible for the two debts shown on his financial affidavit.
The defendant shows no debts on her affidavit.
As earlier indicated, it was represented to the Court that the Court need not concern itself with the automobiles in the respective names of the parties nor personal property including the two computers, televisions and stereos, and therefore the Court enters no order incident thereto.
As to the joint checking accounts and as to the three Fidelity Destiny accounts, the Court directs that they be equally divided, one-half to be set out to each. This includes the Nation's Bank checking account, the Citizen's Bank checking account and the second Citizen's Bank checking account. It includes the Fidelity Destiny 1, Fidelity Destiny 2, Fidelity Destiny 1 IRA, all to be CT Page 116 equally divided. The plaintiff may retain as his sole and separate property the cash value of his serviceman's life insurance of $8,300.00 and the Court is given to understand that the canceled life insurance policy of $8,387.00 has already been expended for certain agreed expenses.
The parties mindful of their request for the effective date of this memorandum of decision may file jointly for federal income tax purposes for 1999. Any refund secured shall be equally shared. In the event of any additional tax liability after credits, that shall be the responsibility of the plaintiff.
With regard to the equal division and apportionment of the Fidelity Destiny assets, the plaintiff shall be entitled to a credit of $ 10,000.00 mindful of the Court's order directing him to convey and set over his equity interest in the Pendleton Hill property and the source of the original deposit of $ 12,000.00 from the plaintiff. Each of the parties shall cooperate in effecting the execution of whatever documents are necessary or required to affect implementation of the Court's orders.
The Court enters no orders with regard to attorney's fees. Each party shall be responsible for their own.
The Court grants the defendant's request for the resumption of her maiden name and henceforth the lady shall be known as Stephanie Woods.
Mindful of the Court's earlier orders, the assets referred are to be divided and not sold or marketed so as to avoid the effect of capital gains; this at the request of the parties.
The Court grants the relief requested. The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried under the statute.
Austin, J.